## NEW YORK CENTRAL RD CO v SENTLE

Ohio Appeals, 6th Dist, Lucas Co

Decided June 29, 1936

Doyle & Lewis, Toledo, Robert Newbegin, Toledo, and D. L. Sears, Toledo, for appellee.

Hyman S. Topper, Toledo, Rupert Holland, Toledo, and William H. McLellan, Jr., Toledo, for appellant.

## OPINION

By CARPENTER, J.

The plaintiff, New York Central Railroad Company, sought compensation for damages to one of its locomotives resulting from a collision of it with defendant's, Harvey H. Sentle's motor tractor and semi-trailer (herein referred to as the truck) loaded with sheet steel on a grade crossing of the railroad's tracks and the highway known as Woodville road in the open country about six miles east of Toledo. The collision occurred about 4:25 A. M., May 28, 1933. It was the Century Limited passenger train, and the amended petition says it was traveling at a speed of seventy-five miles per hour at the time.

Plaintiff alleged the collision was caused by the negligence of the defendant's agent, the driver of the truck, in driving on the railroad track without observing to see whether a train was approaching, without heeding the warning signals by bell and whistle which were sounded continuously from a quarter of a mile of the crossing, and without heeding the visual flasher light signal maintained by plaintiff at the crossing to warn travelers on the highway when a train was approaching the crossing.

The second amended answer admitted the collision occurring at the time and place alleged by plaintiff, and that plaintiff maintained the flasher light signal at the crossing, but denied all the other allegations of the petition. As a separate defense, contributory negligence was pleaded in four particulars:

1. Operating of the locomotive and train "at said time and place at a high and dangerous rate of speed without regard to the defendant's position in the premises."

2. Failure to have headlights so defendant could discover the train approaching.

3. Failure to give warning by bell or whistle.

4. Failure to cause the flasher light signal to operate "within sufficient time to cause the same to be effective warning to said defendant."

No reply was filed by plaintiff. The amount of damage sustained by plaintiff was agreed upon by the parties and was not in issue. The cause was submitted to a jury upon the issues of defendant's negligence and contributory negligence of plaintiff. The jury found for plaintiff.

Motion for new trial was overruled and judgment was entered on the verdict. From that judgment defendant appeals. Various errors are assigned and a reversal is asked.

There was no dispute in the evidence about the physical facts as to the location and condition of things at and about the crossing in question, nor was there very much dispute as to the events that occurred at that crossing at the time of the collision. Practically all of the fact differences arose out of the inferences to be drawn from the undisputed physical facts.

It is conceded by the defendant that the evidence was such that the jury might have found that negligent acts on the part of the defendant combining and concurring with acts or omissions of acts of the plaintiff caused the damage to the plaintiff. The real problem in the trial was whether some of such acts or omissions of acts on the part of the plaintiff were negligent and caused the collision and resulting damages.

All of the assigned errors seriously urged relate to the manner in which the issue of contributory negligence was submitted to the jury.

Because no reply was filed, it is now urged the court erred in submitting the issue of contributory negligence. At no time was

there a motion for judgment on the pleadings. The case was tried as though the affirmative allegations of contributory negligence were denied. The defendant offered several requests to charge before argument on that issue. By so treating the situation, the reply was waived, and defendant cannot now take advantage of its absence. 31 **Ohio Jurisprudence 791.**

The railroad at the crossing has four tracks running nearly east and west. Woodville road runs from southeast to northwest, hence as they cross there is an acute angle at the southeast corner. The highway is a much traveled thoroughfare, and, at the crossing, is paved with concrete forty feet, or four traffic lanes, wide. Flasher light signals were maintained by the railroad at the crossing, one on each side at the right as the traveler on the highway approached the crossing. The one on the south side was on a post about thirty feet southeast from the nearest rail on the line highway traffic moved. They consisted of three electric lights, one of which, when operating, showed constant red light; the other two, above the constant one, alternated a red light off and on. On May 28, 1933, trains approaching from the east automatically closed the electric circuit 3,064 feet from the crossing and started the lights in operation. A train traveling east automatically broke the circuit and stopped the operation of the lights when the rear trucks of the last car were nine feet east of the crossing. Each way from the crossing the country is level and the railroad straight, at the east for two and a half miles, and the view is unobstructed at the crossing and also for a long distance on the highway approaching the crossing from the east. The driver of the defendant's truck was familiar with the crossing and knew that fast trains were operated over it.

The defendant's truck, which weighed 6 tons, with a 12-ton load, approached the crossing from the southeast; a freight train moving about 35 miles per hour was passing east over the crossing on the second track; the lights were operating, and the truck and two passenger automobiles stopped at the crossing.

As soon as the freight had cleared the crossing the automobiles started and passed over in safety. The truck also started across in low or creeping gear at a speed of from two to five miles per hour, and as it was on the third track it was hit by the west bound Century limited passenger train, running on that track.

. . . . . ...

The driver of the truck testified:

"I stopped about 20 feet back of the flasher and waited till the freight train had cleared the track, the crossing, and looked up to see if the flasher was still working, and it had quit, and I looked up and down the tracks to see if there was any other train coming and I proceeded about 15 feet from the track then and opened my door, and looked up, and I listened and did not see or hear anything. So I proceeded on, and then I could see it down the track. All I remember seeing was the headlight, and then the hit."

At the close of the evidence, on motion of the plaintiff, the court struck out of the second amended answer the first allegation of negligence, that as to the speed of the train. Defendant urges this was error. We think it was, and should not have been done, but in view of the manner in which the issue of contributory negligence was submitted to the jury, such error was not prejudicial to the defendant and did not affect his substantial rights, and substantial justice was done in this respect.

In stating to the jury the issues as they appear in the pleadings, the court said that the speed of the train was alleged by plaintiff to have been 75 miles per hour and that this was admitted in the second amended answer, hence was one of the established facts in the case. At no time did the court expressly exclude from the jury's consideration this admitted fact as to the speed of the train, either when it granted the plaintiff's motion to strike out that item from the second amended answer or in the charge.

On the subject of contributory negligence, it charged:

"Contributory negligence in its legal signification is such an act or omission on the part of the plaintiff amounting to a want of ordinary care as concurring or co-operating with some negligence of the defendant is the proximate cause or occasion of the damage complained of. The duty of the plaintiff towards itself which the law imposes upon it was to use ordinary care for its own safety, that is, that degree of care which persons of ordinary care and prudence are accustomed to exercise under the same or similar circumstances. You will then determine from the evidence what ordinary care on the part of plaintiff required it to do, and you will determine whether or not the plaintiff

was negligent in any respect and whether such negligence was one of the proximate causes of its damages. If you find that it was, your verdict will be for the defendant."

This all-inclusive assertion of "negligence in any respect" was ample to direct the jury to consider the admitted fact as to the speed of the train along with other matters pointed out to them or which might even occur to them. This submission of negligence "in any respect" was broader than the defendant was entitled to, under the pleadings, but that was not prejudicial to him.

The second sentence in the part of the charge above quoted is criticized by the defendant. As the issue in this ▆▆▆▆ case involved only the right of the plaintiff railroad to recover for its damages, and the matter then under discussion by the court was the negligence of the plaintiff in relation to its own damage, that sentence is correct. If there had been a cross-petition, the duties of the railroad to the defendant and others on the highway would have been in issue and there would have been occasion for the court to discuss such duties, but such was not the case here.

Five instructions were tendered before argument. The record does not show whether they were offered severally or as a series, but we assume severally. The first was given, the others refused.

All of those refused state two facts that were undisputed, viz., that the passenger train was traveling "at a rate of speed of 70 miles per hour," and the ▆▆▆▆ distance east of the crossing ▆▆▆▆ when the flasher light signal ▆▆▆▆ began and ceased to operate as trains passed over that crossing as heretofore stated. The last two instructions, numbered 4 and 5, each stated those distances differently, sometimes correctly and sometimes incorrectly. The speed of the train is given as 70 miles per hour when it was admitted it was 75 miles per hour. This may be important only as it indicates the careless manner in which the instructions were drawn. All of these instructions then merely stated or called attention to some other fact or facts and told the jury they could take all of these into consideration "along with other facts and circumstances surrounding the collision" in determining the issue of plaintiff's negligence.

The last two also said, among other things, "if you find the crossing * * * was * * * a dangerous crossing"; and also referred to "other facts in the case, proved to your satisfaction by a preponderance of the evidence." Such use of the term "dangerous crossing" for the jury's speculation and determination was improper, as was also the measure of proof "to your satisfaction."

All of the instructions are subject to another serious objection in that they gave undue prominence to particular matters.

"As instructions should not draw the jury's attention to particular facts, it is error to give, and proper to refuse, instructions that unduly emphasize issues, theories, or defenses, whether by repetition or by singling them out and making them unduly prominent, although the instructions may be correct as legal propositions." 64 Corpus Juris, 682.

"It is a dangerous practice to call special attention to an isolated fact and thus, by making it prominent, lead the jury to the opinion that it is of greater significance and weight than other unmentioned facts in the case which may be of no less importance, for the jury will feel bound to regard the fact, thus isolated for their consideration, as the controlling if not the only important fact in the cause which should govern them in making up their verdict." 14 Ruling Case Law, 780.

For these reasons it was not error to refuse to give these instructions.

Much complaint is made as to the charge of the court in certain particulars, but when the whole charge is considered it properly and fairly submitted to the jury the issues in the case.

Recognizing the possibilities of tragic harm which might have resulted from the driving of an object weighing over eighteen tons in the path of a very fast passenger train such as this one was, with its seven Pullman cars and the passengers aboard them, on a four-track crossing with which the truck driver was familiar, we cannot say that the jury's finding was against the weight of the evidence.

Finding no error in the record prejudicial to the defendant and that substantial justice has been done, the judgment is affirmed.

Judgment affirmed.

LLOYD and OVERMYER, JJ, concur.